The first case on our call this morning is agenda number 5, number 129026, People of the State of Illinois v. Daniel D. Basile III. Counsel, are you prepared to proceed? Thank you, Madam Chief Justice, Counsel, Your Honors, and may it please the Court, my name is Assistant Attorney General Matt Steele on behalf of the people. Defendant was indicted for sexual assault on the allegation that Jane Doe was too intoxicated to understand the nature of the act or give knowing consent while defendant performed sexual acts upon her. But the trial court dismissed the indictment and barred re-indictment on due process grounds after parsing a detective's grand jury testimony to inaccurately suggest that defendant confessed to sexual assault. That was error for three reasons. First, there was no prosecutorial misconduct in this case. The people did not present any deceptive or inaccurate testimony or at most did so inadvertently in a good faith. Second, and regardless, defendant was not prejudiced by any misconduct. Third, and finally, at worst, the trial court should have dismissed without prejudice so that the people could present the allegations to the grand jury again without the challenged testimony. Counsel, do you have case law support the idea of this other alternative or suggesting it be dismissed without prejudice? The dismissal without prejudice, Your Honor. Candidly, Illinois case law is sparse, exactly delineating when exactly it's appropriate to dismiss with or without prejudice. But looking to the federal courts of appeals who have spoken a little bit on this question, federal courts have recognized that dismissal with prejudice is only appropriate in truly egregious cases. And it's appropriate only where the constitutional error or the misconduct that occurred in the grand jury could not be cured if a new panel was impaneled and the charges were presented again. Counsel, can I ask you about Devin Cinzo, that case? Does that come into play here? And I'm wondering how you interpret the language in that case that talks about the three instances where you can find that the grand jury was not properly led, so to speak. And so in that case, we talk about the fact that if the prosecutor deliberately or intentionally misleads the grand jury, uses known, perjured, or false testimony, or presents other deceptive or inaccurate evidence. And so my question is, is it your position that the language that talks about deliberateness and intentionality, does that apply to all three instances or just the first instance? So there is some clarification that is needed on precisely what Devin Cinzo requires. Some concurrences in the appellate court have acknowledged that perhaps the deliberate or intentional scienter requirement applies to all three categories. At best, I think Devin Cinzo is not quite precise in that regard. But I think Devin Cinzo, the three categories collectively, are best read as covering the waterfront of bad faith misconduct. That's affirmative misrepresentations. That's misrepresentations through omission. That's outright falsehoods and half-truths. And the catch-all category for other deceptive or inaccurate evidence is best read as also encompassing bad faith misconduct. I'm happy to discuss this. But it doesn't necessarily require, at least the way the case is written, it doesn't say that it has to be intentional. Would you agree? That's correct, Your Honor. And so was it deceptive to say that when the question came from the person serving on the grand jury, how do we know the person who she says did this to her did this, was it deceptive when the detective said he said he did or something along those lines? Was that deceptive? No, Your Honor. It was neither deceptive nor inaccurate, and I'm happy to explain why. I think that reading the grand jury's testimony and the colloquy between Detective Kelly and the grand juror in context, I think Detective Kelly made a good faith attempt to answer the grand juror's confusing question as he reasonably understood it, but really, at worst, they got their wires crossed. And that's not a due process violation because, again, due process requires some culpability indicative of bad faith. But I think examining the colloquy in context, particularly given the nature of the charges, I'm happy to explain I think the best reading that Detective Kelly's answer was, in fact, responsive to the grand juror's question. Well, the defendant admitted having consensual sex with the victim in this case. Is that correct? That's correct. But he did not admit to basically having non-consensual sex. Is that correct? He did not confess to sexual assault. We certainly don't dispute that. But Detective Kelly's answer doesn't suggest otherwise. So the dispute really centers on a few lines of the colloquy before the grand jury. So after some initial confusion, the grand juror asked, given that Jane Doe was extremely intoxicated, quote, how do we know that the person she claims did this to her did it to her? Now, we can't parse this language like a statute. These are two people having a conversation. Neither the trial court nor this court has the benefit of the grand juror's inflection or tone of voice to disambiguate exactly what she was asking. But it's important to stress that Detective Kelly's answer was only inaccurate if the question was, how do we know that the defendant sexually assaulted her, which given the nature of the charges here would mean, how do we know that she wasn't too intoxicated to consent? But context indicates that that's not the question. And at the very least, it wasn't unequivocally so, which is what is required to establish prosecutorial misconduct in the first place. Again, the charges were brought because Jane Doe was heavily intoxicated. The fact that Jane Doe was heavily intoxicated thus did not make her incredible. And to highlight the extreme intoxication is to really answer the question of whether the sex was consensual or not. And context indicates that that's not what the grand juror was asking because the question that the grand juror asked would have been inherently contradictory on that point. It would mean, given the fact that the grand juror highlighted or prefaced her question about Jane Doe's intoxication, the question would have boiled down to, given that she was so intoxicated, how do we know that she wasn't too intoxicated to consent? So just given the nature of the charges, that question would have been internally contradictory. So in light of the charges and in light of the fact that Jane Doe's intoxication, in fact, supported the cause of termination, the question is best read as going to the question of identity. And it's important to stress that the grand juror didn't say, how do we know that defendant sexually assaulted her or how do we know that defendant did this? The grand juror referred to the defendant instead as the person she claims did this to her, which suggests that the grand juror was seeking clarification that defendant was the only suspect that the police had in mind and that the other friends that Jane Doe was drinking with that night along with the defendant. But did what to her? So you're suggesting that the grand juror was asking who had consensual sex with her? That's correct. I think just given the nature of the charges, that I think is the best reading of the grand jury testimony. But again, it's not unequivocally clear that that defendant's reading is the correct one. And I think just given the initial confusion that Detective Kelly had at the outset, again, he did his level best to answer this question as he reasonably understood it. Again, in good faith. And so to the extent that there was a misstatement here, it was done in good faith and inadvertently, which again, going back to the- Counsel, you agree that the statement was subject to ambiguity. I mean, I think you disagreed to that. So was there some responsibility on the part of the prosecutor to make sure that the ambiguity was- that the question and the answer were clear? So we don't dispute that. I think particularly with the benefit of hindsight, it would have been- No, that's a- I'm asking just for a yes or no, if you can answer it in that way. Was there a responsibility on the part of the prosecutor recognizing that there was an ambiguous aspect to that question? It could be understood in two ways. You're admitting that now. So was there a responsibility to clear up that ambiguity? So I would love to give a yes or no answer, but I think- Yeah, I would like you to give one, too. So responsibility in the sense that best practices would dictate that some clarification would have been appropriate out of abundance of caution. But there wasn't a responsibility under the due process clause of the 14th Amendment. And again, that's what this case- So let's go with the best practices concept. You agree that it would have been a good thing to do for the prosecutor to clear up the ambiguity. In fact, it would be best practice for him to do that, right? Yes. So why didn't he? So candidly, in this case, there was some testimony before the motion to dismiss hearing that the prosecutor who presented these charges to the grand jury was not quite as prepared as she should have been before presenting the charges to the grand jury. But then the question becomes, as a result of that preparation, was the defendant denied due process through grave prosecutorial misconduct? And the answer to that question is no. There was no due process violation here, and at the very least, it wasn't unequivocal. Because, again, Detective Kelly's answer was, given the nature of the charges, responsive to the question that the grand juror asked. But at the very least, again, they just got their wires crossed. He made a good faith attempt to try to clarify any confusion. Counsel, you mentioned the fact that we don't have the benefit of actually seeing the witness and hearing the witness testify. But what is our standard of review here, and how do we look at this, given that we don't have that ability? So the legal question here is whether there was an unequivocal denial of due process. And this court has recognized, as recently as Stepinsky, that that question is de novo. Now, my friend does not dispute that the de novo is the appropriate standard. He does say it is referred to in his brief as the abuse of discretion standard. But, again, that only comes in as the appropriate remedy. But it's also clear that I think the trial court's decision to find prosecutorial misconduct here, unequivocal prosecutorial misconduct, would have been erroneous under any conception of the standard. Again, that's given the fact that DiVincenzo is best read as requiring bad faith conduct for each of the categories for both deliberate or intentional misleading. And if we disagree with that, where does that leave you? As to the appropriate legal standard? Well, as far as DiVincenzo, you're talking about the fact that it requires some type of bad faith, irrespective of which of the three prongs, I'll say, that you're coming under. If we disagree with that and say that you don't have to have a showing of bad faith as to the two that follow the one where bad faith is specifically mentioned, where does that leave you? So that leaves us, even if the inadvertent deceptive or inaccurate testimony suffice, again, there wasn't a deceptive or inaccurate statement in the grand jury room under any conception of the legal standard. But also, defendant was not prejudiced in this case. I'm happy to further explain why, even if there was prosecutorial misconduct, dismissal even without prejudice was inappropriate because the defendant wasn't prejudiced. I have a question before you get to that. Certainly. You earlier stated that this was, if you look at the context of the grand jury proceedings, that this clearly went to identity. But the record seems to make it pretty clear that there was never any questions. You know, the grand jury was informed that the defendant was the subject of those accusations all along. Where do you find in the record that there would have been some reason to believe that identity was an issue? So it wasn't an issue in the sense that the people never alleged that there was an alternative suspect that the people had in mind for this prosecution. But that doesn't mean that the grand juror could not have sought abundant certainty on that question. And again, just given the nature of the charges, where Jane Doe is not incredible because she was heavily intoxicated, the defendant was charged because she was heavily intoxicated. To read the grand juror's question as seeking to question the veracity of Jane Doe's claims or her credibility would just mean that the grand juror misunderstood the nature of the charges. And certainly we shouldn't presume that just as in the trial context. We should presume that the petit jury understood jury instructions. And certainly, again, the grand jury colloquy is open to a few interpretations. And I think that just underscores why there wasn't an unequivocal denial of due process here. And as D'Vincenzo and Fassler and other cases recognize, defendant has a high burden of showing an unequivocal denial of due process here. But I'm happy to turn to the question of prejudice. Even if there was an unequivocal denial of due process here through grave prosecutorial misconduct, dismissal was inappropriate because any misconduct did not prejudice defendants. The question is whether any misconduct substantially influenced the decision to indict or leave grave doubt that it did. And really the only dispute in this prosecution is whether Doe was too intoxicated to give consent. And the jury heard ample testimony on this point well before the challenge testimony. The grand jury heard that Doe was falling down drunk and needed help getting into defendant's car. That she was in and out of awareness as defendant performed sexual acts on her. That she had blacked out temporarily between sexual acts. And most critically, that she was unable to perform any sexual acts really reciprocated because of her intoxication. Now the appellate court found that her account was questionable at best because she was heavily intoxicated, called the case weak. But again, Jane Doe was not in front of her because she was heavily intoxicated. Defendant was charged because she was heavily intoxicated. But really even if there was a grave prosecutorial misconduct that was unequivocal. Counsel, I have a quick question. Although defendant was charged because she was heavily intoxicated, are you saying that that could not also be a reason for her credibility to be questioned? Well, certainly her credibility is going to be an issue at trial. I'm just referring to what you just said. It sounded as though you were excluding the fact that her credibility is in question because defendant was charged because she was heavily intoxicated. Therefore, the heavily intoxicated principle doesn't apply to her credibility. I just want to be sure that that's not what you're saying. Well, certainly at trial, the question of whether her heavy intoxication essentially has gaps in her account, that could be explored on the cross-examination. But it's too preliminary at this stage to litigate Jane Doe's credibility because the grand jury's job is preliminary. That's not what I asked, counsel. I just asked whether or not you're saying that her credibility can't be in question because she's heavily intoxicated since that was the basis of charging defendant. Well, certainly it is going to be a question of credibility. So I suppose the answer is yes on that point. Counsel, I have a quick question. The question that you're asking is how do we know that the person she claims did this to her, did it to her? The answer was he told me he did it. Wouldn't it have been more accurate to say he told me he did it and it was consensual? Well, certainly I think we could all agree that, particularly given the benefit of hindsight, that the prosecutor, Detective Kelly, would have wanted to be a little bit more precise here. But that imprecision does not amount to a due process violation. But by failing to leave out the consensual part, that doesn't make his response to that question deceptive? No, Your Honor, because, again, I think context indicates that what Detective Kelly thought he was answering was the question of identity. How do we know that the defendant is the one that had sex with her and performed sexual acts upon her? Didn't the prosecutor then have an obligation to clarify that to make sure that it was clear when Detective Kelly gives the statement? Then understanding that it is at best sort of misleading or vague or not complete, didn't the prosecutor have a duty to do something at that point? If I may respond, Chief Justice? Of course. Thank you. So the prosecutor should have, I think, out of abundance of caution, sought to clarify exactly what Kelly meant by he told me he did. But that failure to pose that follow-up question does not amount to a due process violation, which, again, requires a showing of culpability indicative of bad faith. It certainly wasn't bad faith not to follow up with the next question. You don't think, even though this whole matter comes down to a matter of consent? Again, the question is whether there's been a due process violation here. The due process clause doesn't even cover negligence. It requires something more than a showing of inadvertence or even negligence. It requires some threshold of culpability indicative of a bad faith. So, again, the failure to pose that follow-up question, while perhaps not following best practices, was not indicative of bad faith. How do we know that? Well, I think that that just underscores why it was inappropriate to dismiss it all here. Because, you know, both the trial court, the appellate court, and this court, we are trying to glean what happened here with the benefit of a cold dead transcript. And although there's going to be a judgment call, that judgment call is made harder by the fact that we don't have the benefit of the grand juror's tone of voice or inflection. We don't have the benefit of Detective Kelly's tone of voice or inflection. And that ambiguity means that dismissal was inappropriate. I'm happy to save additional time for rebuttal if there are any questions. Thank you, counsel. Counsel Bradley? May it please the court. Madam Chief Justices, good morning. Counsels, good morning. My name is Mark Bird, and I am both pleased and honored to appear before you this morning on behalf of my client, the appellee, Daniel B. Basil III. Circuit Judge Brendan Maher granted our motion to dismiss with prejudice, finding both prosecutorial misconduct and substantial prejudice to the defendant that amounted to a denial of his due process rights. The Second District unanimously affirmed that ruling, and I'm before you this morning to respectfully request that you also affirm that ruling. Despite my colleague, Mr. Skiba's valiant efforts to try to portray this as a whodunit based upon the language of the transcript, the cold dead transcript, as he refers to it, and as Judge Maher referred to it, there really is no ambiguity if you look at the colloquy between the grand juror and Detective Kelly in this case. If we start out with the very first question that was asked by the grand juror, it's clearly a question directed at the strength of the evidence and suggesting that the grand juror had doubts about the veracity of Jane Doe. That question is, besides that she said this occurred, was there any other evidence that he actually did this to her? This is not an identity geared question. This is a question that is geared toward doubts in his mind about the veracity of Jane Doe and whether or not there's additional evidence. So basically a question of did this really happen? Yes. And was there any other evidence to suggest that it happened? And the only it that we deal with comes from the language in the indictment in the very beginning part of the grand jury testimony, which indicated that we're asking you as a grand jury to indict Daniel D. Basil III, count one, criminal sexual assault without consent, count two, criminal sexual assault without consent. Throughout the transcript, Daniel Basil's name appears 12, 13 times in a four and a half page transcript. No other individual appears as a perspective perpetrator of this alleged offense. There was no confusion in the grand jury's mind or in particular the inquisitive grand juror that posed the question when given the opportunity. Mr. Boyd, I think we all agree that there's some confusion here. Is it your position that it was intentional or deliberate? Ma'am, Justice, when you look at Exhibit B, which is the hour long or more than an hour long interview between Detective Kelly and my client, where Mr. Basil laid out specifically his account of what happened that night, his repeated denial that she was drifting in and out of consciousness, the allegation that he told Detective Kelly that she gave him directions to get to her house from the bar, that when they went to the door, she was able to retrieve her keys from the purse and open the door. When she went in to the residence, she then agreed to have consensual relations with him, not once, but twice, that she gave him direction about what type of things he should not do to her during that encounter. At all points during the encounter, Mr. Basil was clear and unequivocal that this was a consensual relationship between him and Jane Doe and that armed with that hour long transcript or hour long recorded interview, that is what makes Detective Kelly's statement, he told me he did, so egregious in this case, to operate as a denial of due process. So you think this was an intentional, deliberate thing? How could the prosecutor have known that that question was going to come? Well, and that is part of the reason why there was prosecutorial misconduct in this case. The record demonstrates that even though they were not against the statute of limitations or anything like that, this matter was indicted within 30 days or so from when the case is alleged to have occurred, they sent in a prosecutor who was not the prosecutor assigned to the case. The assistant state's attorney that argued this case in front of Judge Maher pointed out that she wouldn't have even had access to the police reports. She wouldn't have had access to the over one hour interview between Detective Kelly and Daniel Basil. She went in, she was given a difficult task to go in, and she went in unprepared, and that is a violation of a prosecutor's responsibility. Judge Maher and the second district said that this is no excuse. As a prosecutor and a grand jury which functions not just as a sword for the state but as a shield for the defendant, you have an obligation to make sure that the record is clear and that you are doing your part to preserve the constitutional rights of the defendant. But does that answer the question as to whether it was intentional? I think your explanation suggests that it really wasn't. I think the state is hard pressed to suggest that Detective Kelly was confused because the effort to try to suggest that he was confused is predicated on this being an issue of identity, which it clearly was not. Let's talk about the prosecutor. You just explained that the prosecutor really didn't understand the nuances and the underpinnings of the case because she had just been given the case without a lot of background information. So her decision to either correct Detective Kelly's answer or not couldn't have been intentional if she didn't understand the underpinnings of the case. So you're saying it wasn't intentional but the prosecutor was sloppy, so that should serve as being intentional. That's what it sounds like. No, Your Honor, not exactly. I believe that, as we have in the context of all criminal definitions of knowledge, you also, with knowledge, you have actual knowledge and you have constructive knowledge, which means should have known. And this court, as recently as last year, in the case of People v. Pranky, which addressed the issue of deceptive testimony at trial and a prosecutor's obligation to correct it, stated, in the absence of an allegation of the knowing use of false testimony or at least some lack of diligence on the part of the state, there has been no involvement by the state in the false testimony or established a violation of due process. In the absence of any allegation that the state knowingly used the false bank bite mark testimony or that the state failed to exercise diligence to discover the testimony was false, Pranky has not pled irrecognizable due process violation under Illinois law. On the facts of this case, there is not only a duty on the part of the prosecutor that falls under the rubric of constructive knowledge, but also a prosecutor's inherent duty to seek justice, not just an indictment in the case. Again, the standard that the state would have this court approve of as the standard going forward is one that essentially eviscerates the shield function of the grand jury in this case and a prosecutor's responsibility to ensure that the defendant's rights are protected. And respectfully, in this case, I believe that's enough. DiVincenzo, the language that you asked my colleague about, clearly does not, in the third clause, suggest that knowing is required. But even if knowing is required, I believe that we meet that standard with constructive knowledge and the idea that this prosecutor should have known and should have been armed and equipped with sufficient facts to be able to ensure that the defendant's rights were protected. Mr. Boyd, if we're to agree that there was a due process violation that warranted dismissal, why dismissal with prejudice? Why not dismissal without prejudice and have an opportunity for a do-over? Because, Your Honor, the case law suggests that when there is a substantial denial of due process, and that's been interpreted both by this court as well as the U.S. Supreme Court, several courts, that the misstatement affected or impacted or should cause grave doubts over whether or not the grand jury's indictment was unreasonably influenced by the misrepresentation. The question on the record in this case is clearly yes. This court, federal courts, the U.S. Supreme Court have all held that there is no more damning type of evidence against an individual than a confession. But I think that's not quite the question here. There's the issue of dismissal. The remedy, let's assume that we were to agree with you in terms of what happened about the question, and the indictment was dismissed. Why would it be dismissed with prejudice? Why would it be in a position where, if perhaps, as you suggest, perhaps it's inadvertent, whatever, the lawyer wasn't prepared, why would this case be barred from prosecution? Because, Your Honor, the misuse. If I may, I want to explain for the students. So dismissal with prejudice means that the state cannot come back and do this over with a different grand jury, hearing the evidence, and without what happened improperly in this case occurring. Thank you very much. We do want to make sure that these are very important, obviously, issues that we want our students to understand, the constitutional rights and then also the impact of those rights and the impact of a violation of those rights. So why does what we've been discussing here lead to the order here that the dismissal was with prejudice and there could not be another indictment brought before a different grand jury? Because, Your Honor, the standard that has always existed is that if the due process violation is egregious enough to have impacted the grand jury, the state is essentially asking you in that situation then to give them a do-over, to give them a pass on introducing... We do that in all kinds of cases. We find there was error and then we remand the case for a new trial without error. Those kind of things happen all the time. Can you point to a specific case that says where there is some kind of misconduct in the grand jury and the indictment that was returned was dismissed, that the state could no longer re-indict the defendant? Well, this court in DiVincenzo indicated that to warrant dismissal of the indictment, the defendant must show that the prosecutor prevented the grand jury from returning a meaningful indictment by misleading or coercing. I agree that there's not a lot of authority that dictates that that dismissal be with prejudice, but if... So how do we analyze that when you say there's not a lot of authority? To me, it is really kind of troubling that we don't have any direction here. Another issue that was raised here was how do we look at the decision by the trial court to bar further prosecution? What is our standard of review? Was there an abuse of discretion by the court? Is it just a discretionary call that the trial court makes about whether or not the case can go forward again? I believe that it is de novo review by the court with the ultimate issue being whether there was an abuse of discretion by the trial court in deciding that the case should be dismissed with prejudice. So it's a prejudicial call for the trial court to say, I find that there was misconduct in the grand jury, the case is dismissed, and you can prosecute. Do we have any direction for trial courts of how to make that discretionary decision? I think it's based upon the egregiousness of the due process violation, which is whether or not there is grave doubts as to the grand jury decision to indict and whether there would have been a decision to indict but for the deceptive and inaccurate testimony or the prosecutorial misconduct, to put it another way. It is somewhat of a hollow remedy if the due process rights being violated of the defendant simply gives the state an opportunity to go back and do it the way they should have done it in the first place. But then we do it all the time, as the Chief said, in cases. Send cases back, retry, strike the error, eliminate the error. Why is this conduct? So do you argue that it has to be egregious? We've got to find the prosecutor conduct was egregious to basically support the appellate court decision? And that the second prong of the test, which is the due process and whether or not his due process rights were substantially impaired, meaning that the grand jury would have been affected or influenced by the misconduct or the misinformation that was provided, at the very least recklessly, more arguably under constructive knowledge. In that situation, I believe the only reasonable course of action would be to dismiss the case with prejudice. Obviously, that's also the argument that most benefits my client. But there are all kinds of situations where we're talking about fundamental constitutional rights where the state does not get a do-over. If there's an illegal search or if there is a denial to the right of counsel, we don't simply appoint a counsel and start over. And I'm not familiar with any cases that suggest that in that situation where a fundamental due process right, like the right under the Fifth and Fourteenth Amendments to be indicted by a grand jury through non-prosecutorial misconduct, inaccurate information, suffices to just give them an opportunity to go back and do it the way it should have been done in the first place. What if this court suppressed a confession? Pardon me? Let's say we're after trial, okay? There was a motion to suppress evidence in terms of confession. And by the time the case gets here, the question is what happens? And let's say this court says the confession should have been suppressed. Doesn't it go back for another trial? I think it goes back for a determination as to whether or not the case can proceed without that evidence that has been suppressed. But in the situation where, unless it's a situation where the state somehow causes the mistrial, then in that situation I don't believe that the defendant would be able to be retried. But in this particular case, the offense was so damning in terms of its impact upon the grand jury. This court, many other courts in the second district, the federal courts, have all indicated that the damage caused by a confession evidence that isn't true, the effect on a grand jury is incalculable. And in this case, with the grand jury asking the grand juror, and we don't know if he's speaking just for himself or perhaps other people on the grand jury panel, had a similar question that was answered through Detective Kelly's misinformation. How do we know that the person she claims did this to her did it to her? And Detective Kelly says he told me he did. The second district held that the operative verbiage of that statement is not one, again, directed at identity, but rather one directed at whether or not the appellee essentially committed criminal sexual assault without consent. And then the answer, he told me he did, would have undoubtedly influenced the grand jury's decision to indict. And in fact, the grand juror then says that is all I needed to know. And at that point, that's all any of them needed to know. This case should have been done right the first time. So is it your position that the assistant state's attorney who was there, that conduct may not have been intentional, just basically sloppy or lack of being prepared, versus Detective Kelly, you're taking the position that that was just false and misleading testimony? Yes, Your Honor, that's exactly the case. I believe that the conduct on the prosecutor's part, at the very least, was a violation of her obligation to investigate and go into the grand jury prepared so that she would have at least constructive knowledge and be able to correct the record. There's no question that in her situation and given her constitutional role, she should have known. Detective Kelly is a completely different scenario because Detective Kelly couldn't possibly have been confused by the language and questioning of the grand juror. Again, it wasn't an issue of identity. And again, how do we know the person she claims did this to her did it to her? The it is criminal sexual assault without consent. This is not a lawyer asking the question. This is a grand jury member. Yes. How can we be so certain the interpretation that the appellate court had on the question is correct? Because if you read the grand jury transcript as a whole, there is no other suspected individual that could have done this other than Daniel Basile, and that's made clear to the grand jury. And again, with the very first question that the grand jury asked, he's not asking about identity. He's asking about additional evidence that he actually did this to her, which is criminal sexual assault without consent. It's the only reasonable interpretation. It was not an abuse of discretion for the circuit court and the appellate court to so find. Thank you very much, Counsel. Thank you very much, Your Honors. I appreciate it. Thank you, Your Honors. Just a few quick points in rebuttal. I'd like to start at the end, which is on the choice of remedy. As numerous members of this court have recognized, the ordinary remedy, even in the trial context for both an acute violation and spray, is dismissal without prejudice. So the state could then try a defendant again. It stands to reason the same policy, the same standards should apply in the grand jury context, where there is still a trial after a grand jury presentation. May I ask you a question here? If that's true, what would the judgment line be in this case? We're going to talk detail specifically for our students. What would be the final judgment of the court in this case? So I think the judgment line would be a reversal of the modification of the judgment to be dismissal without prejudice as opposed to with prejudice. I think it's important to note that there is some agreement between my friend and I that dismissal with prejudice is reserved for truly egregious cases. I think that's really the end of the case because there was no egregious conduct in this case. My friend says that there was no possible confusion that Detective Kelly could have had in a grand jury presentation, but he left out one key line in the grand jury colloquy, which was after the grand juror said, besides that she said this occurred, was there any other evidence that he actually did this to her? Detective Kelly says, I'm not sure I completely understand the question. So there was some further imprecise attempt at clarification that the grand juror asked next, which would reflect the fact that Detective Kelly was quite likely confused as to the aim of the grand juror's question. That again brings me to the point of what is the obligation of this prosecutor? Well, now we understand that maybe there is confusion because now he says I don't understand. So is there an obligation on the part of the prosecutor to come into this grand jury proceeding prepared? Not as a matter of due process, Your Honor. In this case, the question of whether there was prosecutorial misconduct here is not a referendum on the prosecutor's preparation. The question becomes, as a result of that preparation, was there testimony before the grand jury that was deceptive or inaccurate? And as we explain in our briefs, intentionally or culpably deceptive or inaccurate. So in that sense, the due process clause does not provide a remedy for ill preparation. Counsel, if we assume that the detective's answer was intentionally misleading, does that change your response as to the obligation of the prosecutor to come into the grand jury proceeding prepared to address any kind of intentional or knowing misbehavior by the State's witness? So just to clarify, so on the premise that the testimony was intentionally misleading? Yeah. Just hypothetically speaking, let's say that Detective Kelly was intentional in his misleading answer and the prosecutor because you said that since she wasn't – she didn't understand because she hadn't prepared, then she's not responsible even if her witness is giving an intentionally misleading answer? So in that scenario where there is an intentional misstatement by a State's witness, the prosecutor would have an obligation to follow up. And the question becomes, in a different case, this was a non-State actor witness. The analysis may be different. No, this detective was her witness. Correct. So I'm asking you to assume that his answer was intentionally misleading. What is the prosecutor's responsibility under that circumstance? So the prosecutor would have an obligation to follow up at that point. But even then, even if Detective Kelly did intentionally give an accurate statement here, again, dismissal even without prejudice is inappropriate because of the prejudice inquiry, that there was, despite the alleged misconduct, the jury heard ample testimony to establish probable cause. And it's important to stress, really, as we explain in our briefs, how preliminary a grand jury presentation is. Mr. Steeve, if I can interrupt you for a second. So one of the things that we have to consider is in DiVincenzo, for example, there's this language about deliberate and intentional, and then there's a question of whether that language applies to the last section, which is deceptive or inaccurate evidence. If we were to determine that deception, deliberate, intentional deception does not apply here, what would be the effect of any time there was evidence presented to a grand jury that was inaccurate or deceptive, resulting in a due process violation? If we were to determine that it didn't need to be intentional or deliberate, but just determined that it was inaccurate, what would the impact be on grand juries? So the question, just to, if I can clarify the question. Yes. So the premise is, if this court were to conclude that an inadvertent misstatement, inadvertent deceptive or inaccurate testimony suffice, what would be the result of a grand jury presentation? I think as a practical matter, I think what may happen is, after the fact, defendants in trial courts could always parse imprecise testimony after the fact and look to testimony that certainly the prosecutor would want to have back. And again, with the benefit of hindsight, the prosecutor would want to clarify it. One more question, just to clarify some imprecise testimony. And that's my point. I mean, it happens, as you suggest, this is a very preliminary phase of this process, and that there is probably a lot of opportunity for information that is not technically accurate or may perhaps be deceptive, although not intentionally. Correct. And, you know, the impact of that. Precisely. And I think that's precisely why the U.S. Supreme Court in Bangor, Nova Scotia, suggested that mere doubt is not enough. You need to have some knowledge on the part of the government. Essentially a unanimous federal courts of appeals have said to a court that inadvertence does not suffice. Imprecise testimony in response to imprecise questions, that doesn't suffice. There needs to be some level of bad faith, or as some of the treats this call, scienter, in the presentation of grand jury testimony for that precise reason, that it's always possible after the fact to parse grand jury testimony with the benefit of a cold dead transcript to try to find ambiguities where there may or may not be there. And that's precisely why federal courts have required a culpability threshold. Counsel, do we separate the conduct of the state's attorney from the conduct of the police officer, or do we treat them the same since they're both state actors? We would treat them the same for purposes of this case because they are state actors. Again, I think the standards are the same if it's a non-state actor. But then the question becomes whether the prosecutor, again, knew or should have known that testimony is false or inaccurate. But even if she didn't, she's responsible for what the police officer said. Correct. That's correct, Your Honor. And just briefly on the legal standard, I think defendant tries to parse Stephen Chen as though like a statute, but certainly opinions should not be parsed like a statute. His only response really in his brief is to rely on a second district decision called Oliver, which relies on a 40-year-old Second Circuit decision that has, as you can see, has been all but overruled by subsequent U.S. Supreme Court case law. He really provides no compelling response for why the due process clause would require that inadvertent misstatements in the grand jury room would be misconduct. If there are no further questions, we would ask the court to reverse outright that dismissal, even without prejudice, was inappropriate here because there was no misconduct then and no prejudice. But at the very least, dismissal without prejudice rather than with prejudice is appropriate. Thank you. Thank you very much. Agenda number five, number 129026, people of the state of Illinois, v. Daniel D. Bazeal III, will be taken under advisement. Thank you both for your arguments.